James Young, OSB No. 85373
Oregon Law Center
455 S. 4th Street, Ste. 5
PO Box 1098
Coos Bay OR  97420
Telephone:  541/269-2616
Fax: 541/269-1372
jyoung@oregonlawcenterorg

Hope A. Del Carlo, OSB No. 00241
Spencer M. Neal, OSB No. 77286
Oregon Law Center
921 SW Washington St., Suite 516
Portland, OR 97205
Telephone: 503/473-8319
Facsimile: 503/295-0676
hdelcarlo@oregonlawcenterorg
mneal@oregonlawcenter.org

Attorneys for Plaintiffs John Woodworth and Gilda Hodges

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOHN WOODWORTH AND GILDA HODGES; | Case No. 09-3058-CL |
|        Plaintiffs, | |
| v. | |
| BANK OF AMERICA, NATIONAL ASSOCIATION, as successor in interest to COUNTRYWIDE BANK, FSB; RECONTRUST COMPANY, NATIONAL ASSOCIATION, and FEDERAL HOME LOAN MORTGAGE CORPORATION, aka FREDDIE MAC; | SECOND AMENDED COMPLAINT (Truth in Lending Act, Breach of Contract, Fair Housing Act, Equal Credit Opportunity Act) DEMAND FOR JURY TRIAL |
|        Defendants | |

## INTRODUCTION:

1.

This case arises out of a refinanced consumer home loan.  The borrower, John

Woodworth, co-owns a home with his partner Gilda Hodges.  Both plaintiffs are disabled and live on a fixed income.  They were convinced to refinance their mortgage with Countrywide several times, each time folding new loan fees and costs into their loan.  At the closing of the most recent loan, the plaintiffs were not given accurate Truth in Lending disclosures at closing.  This Second Amended Complaint adds additional factual allegations in support of plaintiffs' claims, and alleges new claims based on Countrywide's discriminatory lending and the current servicer's and lender's non-compliance with the federal loan modification program.  It also adds claims against the foreclosure trustee, Recontrust, as a party necessary to support issuance of an order enjoining defendants from foreclosing upon plaintiff's home, and includes Freddie Mac, the current owner of the plaintiffs' loan, as a Truth in Lending Act rescission defendant.

JURISDICTION

2.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337.  Jurisdiction over claims brought under the Truth in Lending Act is authorized and instituted under 15 U.S.C. § 1640(e).  Jurisdiction over claims brought under the Equal Credit Opportunity Act is authorized and instituted under 15 U.S.C. §§ 1691e(f).  Jurisdiction over claims brought under the federal Fair Housing Act is authorized and instituted under 42 U.S.C. § 3613(a).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy.

PARTIES

3.

The plaintiffs, John Woodworth and Gilda Hodges, are natural persons.  Plaintiffs own a home located at 94191 8th St., Gold Beach, Oregon, which is and has been at all times material to this action their principal residence.

///

4.

Defendant Bank of America, NA ("BofA") is a national banking association and the successor in interest by merger to Countrywide Bank, FSB, ("Countrywide") a federally-chartered savings bank.

5.

Defendant ReconTrust Company, N.A.. is a national banking association and a wholly-owned subsidiary of defendant Bank of America, N.A.

6.

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") is a federally-chartered corporation with its principal place of business located at 8200 Jones Branch Drive, McLean, Virginia.  Congress established Freddie Mac in 1970 to support rental housing and home ownership. Freddie Mac is an assignee and the current owner of the plaintiff's loan.

7.

On information and belief, at all times relevant to this action, Bank of America, NA, and Countrywide Bank, FSB regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, making them creditors under the Truth in Lending Act ("TILA"), 15 USC § 1602(f) and Regulation Z, 12 CFR § 226.2(a)(17).

FACTUAL ALLEGATIONS:

8.

Plaintiffs initially purchased their home with financing provided by a Countrywide entity in 2002.

9.

Plaintiffs are both permanently disabled and unable to work. Plaintiff Gilda Hodges suffers from severe post-traumatic stress disorder and fibromyalgia.  Plaintiff John Woodworth has been diagnosed with idiopathic peripheral neuropathy, a painful nerve disorder.

10.

In approximately 2005, plaintiffs discovered that their home needed critical repairs and asked Countrywide to assist with financing.  Rather than making a home equity loan or line of credit, Countrywide's agent told John Woodworth that the project would be financed in stages.

11.

The "staged" financing Countrywide provided to the plaintiffs consisted of a series of refinanced loans, which Countrywide made in 2005, 2006, 2007, and 2008.  Each successive refinance resulted in a new loan with a higher principal balance, including several thousands of dollars in financed fees and costs.

12.

Each time Countrywide refinanced the plaintiffs' home loan, John Woodworth informed Countrywide that he and plaintiff Gilda Hodges were both permanently disabled and lived on a fixed income of government benefits (Social Security Disability) because of their disabilities.

13.

Countrywide closed the refinance in June 2008, in spite of its knowledge that the plaintiffs were low-income and disabled, and had no possibility of earning additional money.  Plaintiff agreed to the loan because Countrywide's agent reassured the plaintiffs that the loan would be affordable for them, or would become affordable later because Countrywide would voluntarily modify the terms.

14.

Plaintiff John Woodworth signed loan documents obligating him to make payments on a refinanced home mortgage funded by Countrywide Bank, FSB, on or about June 28, 2008. Plaintiff Gilda Hodges is not an obligor on this loan, though she retained her ownership interest in her home.

15.

The closing of the plaintiffs' loan was conducted by a mobile notary at a book store in

Gold Beach, Oregon.  At the closing, on or about June 28, 2008, Countrywide Bank, FSB, failed to deliver to the plaintiffs accurate, material, complete Truth in Lending disclosures, in the following particulars:

A.  Failed to give Gilda Hodges any copies of the Notice of Right to Cancel.

B.  Gave John Woodworth four copies of the Notice of Right to Cancel which bore the following defects:

1.  Identified the date of the transaction as "06/25/2008 (e)."

2.  Identified the expiration date of the right to cancel as 06/28/2008.

3.  Indicated that the expiration date of the right to cancel was based upon an estimated closing date.

4.  Used a model form intended for different-lender refinances.

C.  Provided the borrowers with only one copy of the numerical disclosures, rather than giving each a copy.

D.  Provided the borrowers with additional written disclosures describing the Truth in Lending Act's rescission right as follows: "Your mortgage transaction may require a rescission period.  This means your loan funds will be disbursed four (4) business days after your complete and accurate signing of all required documents with a notary."

16.

Plaintiffs' combined monthly income is approximately $1300.00 in Social Security payments.  The new loan made to them by Countrywide requires payments of $856.64, not including taxes and insurance.  This amount represents 66% of the plaintiffs' household income.

17.

In each of the transactions described in the preceding paragraphs, Countrywide was aware or should have been aware that plaintiffs are disabled and live on a low, fixed monthly income.  Plaintiffs have no ability to work to increase their income.  Countrywide failed to inform plaintiffs that the loans is continually arranging and funding, in an ongoing scheme to

strip them of their home equity, were unaffordable.  The loan transactions described in this complaint were against plaintiffs' financial interest, and were consummated due to thier vulnerability as disabled persons.  As a result of the unaffordable terms of the loan, plaintiff Woodworth is in default on his mortgage.

18.

Plaintiffs obtained legal counsel and exercised their rights to rescind the loan under the Truth in Lending Act on May 22, 2009.  When the rescission letter was not honored by Bank of America, plaintiffs filed this lawsuit to enforce their TILA rescission rights on June 24, 2009.

19.

Defendant ReconTrust, N.A., as foreclosure trustee for Bank of America, began a non-judicial foreclosure proceeding against the plaintiff's home in approximately August 2009.  A foreclosure sale of the plaintiff's home is currently set for April 5, 2010.

20.

The United States is in the throes of an unprecedented housing crisis, resulting in widespread foreclosures and economic difficulties.

21.

As an initial response to the national housing crisis, on October 3, 2008, the federal government enacted the Emergency Economic Stabilization Act of 2008, which created the Troubled Asset Relief Program commonly known as TARP. One stated purpose of the Act was to preserve home ownership. 12 U.S.C. 5201(2)(B). Under the Act, the Secretary of the Treasury Department was directed to "implement a plan to maximize assistance for homeowners" and "facilitate loan modifications to prevent avoidable foreclosures." 12 U.S.C. 5219(a)(1).

22.

The current presidential administration announced the Making Home Affordable Program on February 18, 2009, which was created to help millions of homeowners restructure or refinance their mortgages to avoid foreclosure, thereby helping to stabilize the U.S. housing

Page 6 -        SECOND AMENDED COMPLAINT

market. Under this Plan, the Treasury Department created the Home Affordable Modification Program ("HAMP") and issued uniform guidelines for mortgage modifications nationally, available at www.hmpadmin.com.

23.

The purpose of HAMP is to help stabilize the housing market, in part by offering assistance to struggling borrowers, reducing their monthly mortgage payments and preventing avoidable foreclosures.

24.

The federal government, through the Federal National Mortgage Association ("Fannie Mae"), obtained agreements with mortgage lenders and servicers to provide homeowners with foreclosure relief through modified mortgages, in accordance with HAMP, in exchange for receipt of federal TARP funds. The TARP funds are intended to realign incentives so that mortgage lenders and servicers will be financially motivated to modify mortgages rather than foreclose.

25.

Plaintiff's loan is owned by Freddie Mac, a government-sponsored enterprise ("GSE"). Participation in the HAMP program is mandatory for GSEs.

26.

The plaintiff is an intended beneficiary of the HAMP program, and his servicer, Bank of America, has signed an agreement with the Treasury Department to comply with HAMP in servicing residential mortgages.

27.

Beginning in 2009, plaintiff John Woodworth worked with BofA to apply for a modification of the loan terms under HAMP due to the unaffordability of plaintiff's mortgage.

28.

On or about July 13, BofA sent plaintiff documents explaining the HAMP program.

Plaintiff Woodworth responded on or about July 28, 2009 by sending BofA a hardship letter of explanation and income documentation.

29.

On November 16, 2009, BofA informed John Woodworth by telephone that he was approved for a loan modification under HAMP.

30.

On January 27, 2010, plaintiff Woodworth received trial modification documents by mail, including a document entitled Home Affordable Modification Trial Period Plan. A few weeks later, he received duplicate copies of the same documents.

31.

On February 24, 2010, plaintiff Woodworth sent signed copies of the Home Affordable Modification Trial Period Plan to BofA and requested supporting documents via overnight delivery, and made his first trial modification payment in the amount of $503.75. Plaintiff simultaneously transmitted a letter to BofA with his HAMP docuemnts, and through counsel, which clarified that entering into a trial modification under HAMP did not waive his rights under TILA. The letter informed BofA that plaintiff qualifies for a property tax deferral due to his disability, and thus may choose not to escrow tax for the year 2010.

32.

On March 11, 2010, BofA sent plaintiff Woodworth a letter stating that "we are missing some required documents, or some of the documents were sent to us with missing or incomplete information." BofA also sent plaintiff a mortgage statement that demands a payment of $1136.08 instead of the trial modification payment amount of $503.75.

33.

To the best of plaintiffs' knowledge, plaintiff has fully complied with BofA's request for information to support a HAMP modification. In response to BofA's March 11 letter, plaintiff Woodworth again sent BofA the information requested on March 15, 2010.

34.

On information and belief, in spite of plaintiff's approval for and compliance with a trial modification under HAMP, BofA continues to press the foreclosure process forward in order to exert psychological and financial pressure upon the plaintiffs to settle their legal claims. On information and belief, defendant is intentionally engaging in this conduct in retaliation against plaintiffs' good faith attempt to exercise their rights under the federal consumer laws, including the Truth in Lending Act.

FIRST CLAIM FOR RELIEF - Truth in Lending Act–Rescission and
Disclosure Violations (Against BofA and Freddie Mac)

35.

Plaintiffs reallege and incorporate by reference paragraphs 1 through 34.

36.

Defendant's loan to plaintiff Woodworth was a consumer credit transaction subject to both plaintiffs' right of rescission pursuant to TILA, 15 USC § 1635, and Regulation Z, 12 CFR § 226.23.

37.

At the consummation of the refinanced loan transaction, defendant failed to deliver to each of the plaintiffs all correct material disclosures required by TILA, including disclosure of their right to cancel the loan within three days, in violation of 12 CFR § 226.15(b)(5). The violations are described in detail in paragraph 15 of this complaint, and were apparent on the face of the documents to the lender and all subsequent assignees.

38.

Pursuant to 15 USC §1635(a) and 12 CFR § 226.23(a)(3), the plaintiffs had a continuing right to rescind the consolidated transaction for up to three years following the loan's consummation.

39.

On or about May 22, 2009, the plaintiffs rescinded the mortgage under the Truth in Lending Act, 15 USC § 1635, through a rescission demand letter sent by certified mail to defendant Countrywide Bank, FSB, and others.  More than 20 calendar days have passed since the defendant received a copy of plaintiff's notice of rescission.

40.

The defendant has not returned the plaintiffs' moneys, as required by 15 USC § 1635(b) and 12 CFR § 226.23(d)(2).12.

As a result of the aforesaid violations of TILA, pursuant to 15 USC § 1635(a) and 1640(a), defendant is liable to plaintiff for:

A.  Return of any money or property given by the plaintiffs to anyone in connection with this transaction, including all loan fees and costs paid in connection with the loan and all payments made by plaintiff, along with other actual damages to be proven at trial.

B.  Statutory damages of up to $4,000.00 for each borrower for the disclosure violations, and for violation of TILA's rescission procedures.

C.  Reasonable attorney fees and costs.

SECOND CLAIM FOR RELIEF -Breach of Contract, Duty of Good Faith and Fair Dealing
(Against BofA and Freddie Mac)

41.

Plaintiffs reallege and incorporate by reference paragraphs 1 through 39.

42.

Defendant BofA entered into a Servicer Participation Agreements ("the SPA") to participate as a voluntary HAMP servicer with the Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation and financial agent of the United States.

43.

As a GSE, Freddie Mac is required to participate in the HAMP program with respect to

loans it owns.

///

44.

The obligations of the SPA extend to defendants BofA and ReconTrust, as BofA's foreclosure trustee, agent, and wholly-owned subsidiary.

45.

Defendants are bound to comply with the Supplemental Directives and HAMP Program Documentation issued by the Treasury, Fannie Mae, or Freddie Mac after the initial SPA was signed.  These terms are found at https://www.hmpadmin.com/portal/programs/directives.html

46.

As a part of the HAMP Program Documentation described in Section 1 of the SPA, "Supplemental Documentation - Frequently Asked Questions, Home Affordable Modification Program" was issued by the Treasury on November 12, 2009. This documentation clarifies that the following requirements are binding terms of the SPA:

    a.      "Participating servicers are required to validate the homeowner's eligibility for HAMP and capacity to pay." (Q3, p.2).

    b.      "Foreclosure actions[ * * * ,] including initiation of new foreclosure actions, must be postponed for all borrowers that meet the minimum HAMP eligibility criteria." (Q3, p.2)

    c.      "[A]ny foreclosure sale must be suspended and no new foreclosure action may be initiated during the trial period. Foreclosure actions may not be initiated or restarted until the borrower has failed the trial period and the borrower has been considered and found ineligible for other available foreclosure prevention options." (Q63, p.14).

47.

The applicable Supplemental Directives and terms of the SPA are implied provisions of the plaintiff's loan agreement, including the requirements of HAMP to modify mortgages and prevent foreclosure.

48.

Defendants had a duty to comply with the terms of the SPA, which included completing the necessary steps to modify plaintiff's mortgage in accordance with HAMP, and to suspend the pending foreclosure.

49.

Plaintiff triggered that affirmative duty by meeting the eligibility requirements for HAMP, and by completing and submitting the application and supporting documents to qualify for a HAMP modification, negotiating a trial modification, and successfully sending his initial trial period payment in the modified mortgage amount.

50.

Defendants are breaching the implied terms of the plaintiff's note supplied by the SPA, including the duty of good faith and fair dealing inherent in any contract, in the following ways:

a.      By failing to properly acknowledge receipt of and process the trial modification forms and supported documents plaintiff supplied.

b.      By continuing to press the pending foreclosure by keeping the sale date of April 5, 2010, on the trustee's calendar, when plaintiff is eligible for a trial modification under HAMP, has signed and submitted trial modification documents and supporting evidence, and has made his initial payment under the trial modification.

51.

Plaintiff has no adequate remedy at law, rendering injunctive relief appropriate. Plaintiff seeks a decree from the Court directing each defendant as follows:

a.      To cancel the trustee's sale scheduled for April 5, 2010; alternatively, ordering the defendants not to conduct the foreclosure sale as long as plaintiff continues to make each trial modification payment by the fifth day of the month in which it is due.

b.      To modify plaintiff's note and trust deed to reflect monthly payments of $503.75, in accordance with HAMP and to reflect a payment schedule of principal and interest in

accordance with HAMP.

      c      To modify the escrow provisions of plaintiff's note and trust deed to allow him to take advantage of the property tax deferral program afforded to disabled persons under Oregon law.

      d.      To subtract all fees and costs related to the initiated foreclosure action from plaintiff's unpaid principal balance.

      e.      To comply with all provisions of HAMP, federal law, and state law.

      f.      Such other relief as equity dictates.

PLAINTIFF'S THIRD CLAIM FOR RELIEF – Fair Housing Act (Against Bank of America)

52.

Plaintiff hereby re-alleges and incorporate by reference paragraphs 1 through 51 above.

53.

The mortgage loans described in this complaint were "residential real estate-related transactions" within the meaning of 42 U.S.C. § 3605(b).

54.

Defendant is a person or other entities whose business includes engaging in residential real estate-related transactions, within the meaning of 42 U.S.C. §§ 3602 and 3605.

55.

Defendant's predecessor's predatory, unaffordable loans to plaintiffs, under the terms described above, constituted discrimination against plaintiffs on the basis of their handicaps, in violation of 42 U.S.C. §§ 3604 and 3605, and "discriminatory housing practices" as defined by 42 U.S.C. § 3602.

56.

Because of Countrywide's discriminatory housing practices, for which BofA is liable as Countrywide's successor, plaintiffs have incurred actual economic and non-economic damages, as described more fully in the prayer for relief.  Plaintiffs are also entitled to an award of reasonable

attorney fees and costs under the FHA.

///

57.

Defendants were aware of plaintiffs' federally protected rights under the FHA, and were aware or should have been aware of their disabilities, and acted with malice or, alternatively, with callous or reckless indifference that their actions might violate plaintiffs' federally protected rights, warranting an award of punitive damages, to be proven at trial.

FOURTH CLAIM FOR RELIEF– Equal Credit Opportunity Act (ECOA) – (Against Bank of America and Freddie Mac)

58.

Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 57 above.

59.

Defendants are "creditors" and plaintiffs' applications for mortgages through Countrywide, and to BofA for a HAMP modification, constituted applications for or an aspect of ongoing credit transactions, as defined by the ECOA, 15 U.S.C. § 1691a and Regulation B, 12 C.F.R. § 202.2.

60.

Plaintiffs are "applicants" for credit within the meaning of 15 U.S.C. § 1691a and Regulation B, 12 C.F.R. § 202.2.

61.

Plaintiffs are members of a protected class based on their receipt of Social Security Disability income, a federal public assistance program, by virtue of 15 U.S.C. § 1691(a)(2) and Regulation B, 12 C.F.R. § 202.2(z).

62.

Plaintiff Woodworth is a member of a protected class based on his good faith exercise of rights under the federal Consumer Credit Protection Act ("CCPA"), which he exerted by sending

a letter to BofA rescinding his loan, and by filing this action.

63.

Defendants discriminated against plaintiffs in the following ways:

1.  With respect to both plaintiffs, by refinancing the plaintiffs' home loan four times, charging fees each time, instead of offering plaintiffs a traditional home equity loan or line of credit for their home repair financing, with knowledge that the plaintiffs were recipients of public benefits without capacity to repay the loans.

2.  With respect to plaintiff John Woodworth, by violating their duties to act in accordance with HAMP with respect to plaintiff's loan, by failing to acknowledge receipt of and process his trial modification documents transmitted to the bank on February 24, 2010, by failing to complete the necessary steps to modify plaintiff's mortgage in accordance with HAMP, and to suspend the pending foreclosure.  On information and belief, Freddie Mac participated in or knew of BofA's decisions with respect to the plaintiff's application for a modification under HAMP, including keeping the April 5, 2010 date on the calendar in spite of plaintiff's acceptance of and cooperation with the terms of a trial modification.

64.

On information and belief, defendants' actions in failing to comply with HAMP were in retaliation for plaintiff's exercise of his rights under the federal consumer laws, and were intended as a means of psychological pressure to chill the plaintiff's enforcement of those rights.

65.

The above actions by defendants constituted discrimination against plaintiffs on the basis of their public assistance status and exercise of rights under the CCPA, in violation of 15 U.S.C. § 1691(a)(2) and(3), and Regulation B, 12 C.F.R. § 202.2(z).

66.

Because of the above-referenced violations of the ECOA and Regulation B and in accordance with 15 U.S.C. § 1691e, defendants are liable to plaintiffs for economic and non-

economic actual damages to be established at trial; punitive damages not to exceed $10,000.00; and costs and reasonable attorney fees.

PRAYER FOR RELIEF:

67.

WHEREFORE, plaintiffs pray for:

1.  On their claim for relief under the Truth in Lending Act:

    A.  Actual damages in an amount to be proven at trial, together with prejudgment interest;

    B.  Statutory damages under TILA of $4000.00 for each plaintiff, totaling $8000.00;

    C.  Attorneys fees pursuant to 15 USC § 1640(a)(3);

    D.  Reasonable costs of the action.

    E.  A court order declaring valid the plaintiffs' exercise of rescission under the Truth in Lending Act, and enjoining the defendant, its agents, and assigns, from foreclosing upon the property secured by the loan.

2.  On their second claim for relief, for breach of the contractual duty of good faith and fair dealing by fail to follow the HAMP guidelines:

    A. A decree from the court directing each defendant as follows:

    a.  To cancel the trustee's sale scheduled for April 5, 2010; alternatively, ordering the defendants not to conduct the foreclosure sale as long as plaintiff continues to make each trial modification payment by the fifth day of the month in which it is due.

    b.  To modify plaintiff's note and trust deed to reflect monthly payments of $503.75, in accordance with HAMP and to reflect a payment schedule of principal and interest in accordance with HAMP.

    c.  To modify the escrow provisions of plaintiff's note and trust deed to allow him

to take advantage of the property tax deferral program afforded to disabled persons under Oregon law.

d.  To subtract all fees and costs related to the initiated foreclosure action from plaintiff's unpaid principal balance.

e.  To comply with all provisions of HAMP, federal law, and state law.

f.  Such other relief as equity dictates.

3.  On their third claim for relief (Fair Housing Act):

A.  Actual damages, including economic and non-economic damages, in an amount to be proven at trial, together with prejudgment interest;

B.  Reasonable attorney fees and costs, pursuant to 42 U.S.C. § 3613(c)(2);

C.  Punitive damages in the minimum amount of $2,000,000.

4.  On their fourth claim for relief (Equal Credit Opportunity Act):

A.    Actual damages, including economic and non-economic damages, in an amount to be proven at trial, together with prejudgment interest;

B.    Punitive damages not to exceed $10,000.00 from each defendant;

C.    Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1691e.


JURY DEMAND:

68.

Plaintiffs hereby demand trial by jury.

DATED this 21st day of June, 2010.

OREGON LAW CENTER

By:  *Hope A. Del Carlo*
    Hope A. Del Carlo, OSB No. 00241
    Spencer M. Neal, OSB No. 77286
    Oregon Law Center
    hdelcarlo@oregonlawcenterorg
    mneal@oregonlawcenter.org

James Young, OSB No. 85373
Oregon Law Center
455 S. 4th Street, Ste. 5
PO Box 1098
Coos Bay OR  97420
Telephone:  541/269-2616
Fax: 541/269-1372
jyoung@oregonlawcenterorg

_____    Of Attorneys for Plaintiffs