FILED'11 MAR 22 15:38USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOHN WOODWORTH and
GILDA HODGES,

                    Plaintiffs,

        v.

BANK OF AMERICA, NATIONAL
ASSOCIATION, as successor in interest to
COUNTRYWIDE BANK, FSB; RECONTRUST
COMPANY, NATIONAL ASSOCIATION; and
FEDERAL HOME LOAN MORTGAGE
CORPORATION aka FREDDIE MAC;

                    Defendants.

Civil No. 09-3058-CL

**REPORT AND RECOMMENDATION**

CLARKE, Magistrate Judge.

        This matter comes before the court on first and second requests for judicial notice (#30,

61) filed by defendant Bank of America, National Association, as successor in interest to

Countrywide Bank, FSB ("Bank of America" or "B of A") (#32). Also before the court is a

motion to dismiss filed by Bank of America (#32), and joined (#74) by defendants Recontrust

Company, National Association ("Recontrust") and Federal Home Loan Mortgage Corporation

a.k.a. Freddie Mac ("Freddie Mac") (collectively, "defendants"). Plaintiffs John Woodworth

Page 1 - REPORT AND RECOMMENDATION

("Woodworth") and Gilda Hodges ("Hodges") (collectively, "plaintiffs") oppose the requests for
judicial notice an motion to dismiss. Upon consideration of the motions and the entire file, the
court recommends that the B of A's Request for Judicial Notice be granted in part and denied in
part, that B of A's Second Request for Judicial Notice be granted in its entirety, and that the
motion to dismiss joined by all defendants be granted in part and denied in part.

## BACKGROUND

Plaintiffs John Woodworth and Gilda Hodges co-own real property located at 94191 8th
Street in Gold Beach, Oregon, which they maintain as their principal residence. (Second Am.
Compl. ("SAC") at 2, ¶ 3). Plaintiffs purchased their home in 2002. (Id. at 3, ¶ 8). Countrywide
or one of its subsidiaries or affiliates financed the purchase. (Id.). Plaintiffs are both
permanently disabled and unable to work. (Id. at 3, ¶ 9). Plaintiffs' sole source of income is
Social Security Disability ("SSD") benefits. (Id. at 4, ¶ 12). Their combined monthly income is
approximately $1,300. (Id. at 5, ¶ 16).

In 2005, plaintiffs contacted Countrywide to obtain financing needed to complete repairs
to their home. (Id. at 4, ¶ 10). Countrywide's agent told plaintiffs the project would be financed
in stages. (Id.). Instead of a line of credit or home equity loan, Countrywide refinanced
plaintiffs' home loan in 2005, 2006, 2007, and 2008. (Id. at 4, ¶¶ 10-11). Woodworth and
Hodges informed Countrywide that they were permanently disabled and living on fixed
government disability benefits each time the loan was refinanced. (Id., ¶ 12). At the time of the
June 2008 refinance, Countrywide's agent assured plaintiffs that if the loan was not affordable for
them, Countrywide would voluntarily modify the terms of the loan to make it affordable. (Id., ¶
13). The June 2008 refinance closing was conducted at a book store by a mobile notary on or

Page 2 - REPORT AND RECOMMENDATION

about June 28, 2008. (Id. at 4-5, ¶ 15). Woodworth was provided with four copies of a Notice of Right to Cancel ("NORTC") form intended for use with different-lender refinances, which identified the transaction date as "06/25/2008 (e)" and the expiration date as 06/28/2008. (Id.). Woodworth was also provided a single copy of the numerical disclosures, and received a written disclosure stating that the refinance might be subject to a rescission period, in which case the funds would be disbursed four business days after all required documents were signed with a notary. (Id). Hodges, who was not an obligor on the loan, did not receive any copies of the NORTC or the numerical disclosures. (Id.). Hodges did not sign the June 2008 loan documents, but remained on title to the property. (Id., ¶ 14).

Woodworth was unable to make the payments on the loan under the terms of the 2008 refinance and defaulted on the loan. (Id. at 6-7, ¶ 17). Plaintiffs rescinded the loan by sending a rescission letter to B of A on or about May 22, 2009. (Id. at 6, ¶ 18). Plaintiffs filed this action on June 24, 2009, following B of A's refusal to honor plaintiffs' rescission. (Id.).

On or about July 13, 2009, B of A sent Woodworth documents explaining the federal Home Affordable Modification Program ("HAMP"). (Id. at 7-8, ¶ 28). In response, Woodworth sent B of A a hardship letter of explanation and income documentation. (Id.). ReconTrust, N.A., as foreclosure trustee for B of A, commenced a non-judicial foreclosure proceeding against plaintiffs' home in August of 2009. (Id. at 6, ¶ 19). The foreclosure sale of plaintiffs' home was scheduled for April 5, 2010. (Id.).

On November 16, 2009, B of A informed Woodworth by telephone that he had been approved for a HAMP modification. (Id. at 8, ¶ 29). On January 27, 2010, Woodworth received trial modification documents regarding the HAMP modification. (Id., ¶ 30). On February 24,

Page 3 - REPORT AND RECOMMENDATION

2010, Woodworth mailed B of A signed copies of the HAMP modification and the requested
supporting documentation via overnight mail, along with his first trial modification payment in
the amount of $503.75, a letter reserving his rights under TILA, and a letter informing B of A
that under Oregon law he qualifies for property tax deferral and may choose not to escrow
property taxes. (Id., ¶ 31). On March 11, 2010, B of A sent Woodworth a letter informing him
that the information received was either incomplete or missing documents. (Id., ¶ 32). B of A
also mailed plaintiff a mortgage statement showing a payment due of $1,136.08. (Id.). On
March 15, 2010, Woodworth sent B of A the information he believed to be requested and
necessary. (Id., 33).

Plaintiffs' Second Amended Complaint ("SAC") (#28) alleges claims for (1) violation of
their right of rescission under the Truth in Lending Act ("TILA") 15 U.S.C. § 1601, *et seq.*, and
Regulation Z, 12 C.F.R. § 226.23; (2) discrimination on the basis of disability in violation of the
Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; (3) violation of the Equal Credit
Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and Regulation B, 12 C.F.R. § 202.2; and
(4) breach of contract and the duty of good faith and fair dealing for failing to make the Home
Affordable Mortgage Plan ("HAMP") modification permanent.

## STANDARD

### REQUEST FOR JUDICIAL NOTICE

In ruling on a motion to dismiss for failure to state a claim, "a court may generally
consider only allegations contained in the pleadings, exhibits attached to the complaint, and
matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir.
2007). Accordingly , the court may properly take judicial notice of matters in the public record

Page 4 - REPORT AND RECOMMENDATION

on a motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for

summary judgment." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986),

*overruled on other grounds by* Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111

(1981); *see also* FED. R. EVID. 201(b) (judicially noticeable facts are those "not subject to

reasonable dispute" because they are "generally known" within the jurisdiction of the court or

"capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned").

## MOTION TO DISMISS

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

upon which relief can be granted. The question presented by a motion to dismiss is not whether

the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in

support of the claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other*

*grounds by* Davis v. Scherer, 468 U.S. 183 (1984). In answering this question, the court must

assume that the plaintiff's allegations are true and must draw all reasonable inferences in favor of

the plaintiff. *See* Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). A complaint

need not make "detailed factual allegations," however, "a formulaic recitation of the elements of

a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

To survive a motion to dismiss under FRCP 12(b)(6), plaintiffs must allege sufficient facts to

"raise a right to relief above the speculative level." Id. at 555. That is, plaintiffs must show that

their claims not merely conceivable, but plausible. Id. at 570; Ashcroft v. Iqbal, -- U.S. --, --, 129

S.Ct. 1937, 1950 (2009). This plausibility inquiry is "a context specific task that requires the

reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

The court inquiry is limited to the face of the complaint, id., and matters that may be judicially

noticed, MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If the court dismisses the complaint, it must then decide whether to grant leave to amend.

Leave to amend should be granted unless it is clear that the complaint cannot possibly be cured

by the allegation of other facts. Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995); see

also Fed. R. Civ. P. 15(a) ("leave [to amend] is to be freely given when justice so requires"). The

court must also consider whether granting leave to amend will result in undue prejudice to the

opposing party, is sought in bad faith or for a dilatory motive, is futile, or creates undue delay.

Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001). When amendment

would be futile, dismissal may be ordered with prejudice. Oki Semiconductor Co. v. Wells

Fargo Bank, Nat. Ass'n, 298 F.3d 768, 772 (9th Cir. 2002) (citing Dumas v. Kipp, 90 F.3d 386,

393 (9th Cir. 1996)).

## DISCUSSION

### REQUEST FOR JUDICIAL NOTICE

B of A requests that the court take judicial notice of a total of nine documents, attached as

exhibits to the declarations submitted in support of its first and second request for judicial notice.

### I. First Request for Judicial Notice

In its first Request for Judicial Notice ("RJN") (#30), B of A requests that the court take

judicial notice of seven documents attached to the Declaration of Megan E. Smith in support of

Defendant Bank of America's Request for Judicial Notice ("First Smith Declaration" or "Smith

Decl."):  (1) a Notice of Right to Cancel ("NORTC") dated June 25, 2008 (Smith Decl. Ex. 1);

(2) a Deed of Trust in the amount of $143,200, which bears the recording stamp of the Curry

Page 6 - REPORT AND RECOMMENDATION

County Clerk's Office dated June 14, 2007 (Smith Decl. Ex. 2); (3) a HUD-1 showing a settlement date and disbursement date of July 8, 2005 (Smith Decl. Ex. 3); (4) a HUD-1 showing a settlement date of February 16, 2006 (Smith Decl. Ex. 4); (5) a HUD-1 showing a settlement date and disbursement date of August 18, 2006 (Smith Decl. Ex. 5); (6) a HUD-1 showing a settlement date of June 6, 2007 (Smith Decl. Ex. 6); and (7) a HUD-1 showing a settlement date of June 28, 2006, and a disbursement date of July 9, 2006 (Smith Decl. Ex. 7). Plaintiffs oppose (#39) B of A's Request for Judicial Notice.

### A. Exhibit 1

B of A contends that since plaintiffs directly allege that they were provided a copy of a NORTC at the June 28, 2008 closing, and their claim for violation of TILA's rescission notice requirements depend on the contents of that NORTC, the court may properly consider Exhibit 1 under the doctrine of incorporation. Plaintiffs respond that the doctrine of incorporation is unavailing because the authenticity of Exhibit 1 is disputed.

The doctrine of incorporation by reference has been extended to situations where the complaint necessarily relies upon a document or the contents of a document are alleged in a complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance. *See* Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Parrino v. FHP, Inc., 146 F.3d 699, 705, 706 n. 4 (9th Cir. 1998), *rev'd by statute on other grounds*. However, the mere mention of the existence of a document is insufficient to incorporate the contents of a document. *See* U.S. v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003). Here, plaintiffs allege that on or about June 28, 2008, they closed a loan with Countrywide for which they were provided a NORTC. Thus, plaintiffs' SAC directly references *a* NORTC. However,

Page 7 - REPORT AND RECOMMENDATION

plaintiffs dispute that Exhibit 1 is *the* NORTC which they were provided at the closing.

Plaintiffs allege that the NORTC they were provided identified the date of the transaction as "06/25/2008 (e)" and the expiration date of the right to cancel as "06/28/2008." By contrast, Exhibit 1 identifies a transaction date of "06/28/2008 (e)" and the expiration date as "07/02/2008." While plaintiffs do not go so far as to allege that their signatures are forged or that the dates have been altered, they clearly dispute the authenticity of Exhibit 1. The doctrine of incorporation is not properly invoked where a document's authenticity is in question. The court therefore recommends the Request for Judicial Notice be DENIED as to Exhibit 1.

### B. Exhibit 2

B of A argues that Exhibit 2 is a publicly recorded document, and therefore properly subject to judicial notice. Plaintiffs respond that while Exhibit 2 is properly subject to judicial notice, the court may not take judicial notice of "any adjudicative facts that could be drawn from [it]." (Id. at 5, ¶ B). The court finds that Exhibit 2 is a publicly recorded document properly subject to judicial notice, and therefore recommends the Request for Judicial Notice be GRANTED as to Exhibit 2.

### C. Exhibits 3, 4, 5, 6, and 7

B of A argues that the court may properly consider these exhibits under the doctrine of incorporation because they are central to plaintiffs' claims and plaintiffs do no dispute their authenticity. Plaintiffs object, arguing that they do not specifically refer to any of these exhibits in their complaint, nor do any of their claims necessarily rely on these exhibits, thus the doctrine of incorporation is inapplicable. Plaintiffs further argue that Exhibits 3, 4, 5, 6, and 7 are unauthenticated private business records not capable of verification and therefore are not

Page 8 - REPORT AND RECOMMENDATION

properly subject to judicial notice. (Pls' Opp'n at 4-6, ¶¶ A, C). Defendants respond that the doctrine of incorporation applies because (1) plaintiffs have implicitly admitted that the exhibits are authentic by failing to specifically object to their authenticity; (2) plaintiffs' claims of "predatory" lending necessarily rely on the terms of the loans they received, which are memorialized in these HUD-1 documents; and (3) the exhibits are central to plaintiffs' FHA and ECOA claims "because they show the dates and parties to those loans and establish that plaintiffs' claims under the FHA and ECOA are time-barred" with regard to the 2005, 2006, and 2007 refinances. (Def. Response to Pls' Opp'n, Dckt. # 63 at 3, ¶ B1).

The court finds that the doctrine of incorporation is not applicable to Exhibits 3, 4, 5, 6, and 7, and therefore declines to consider them. First, it is clear from the arguments raised by plaintiffs in their briefing and at oral argument that they do, in fact, object to the authenticity of these documents. Second, plaintiffs' SAC does not refer to any of these exhibits, nor is it clear that plaintiffs' discrimination claims under either the FHA and the ECOA necessarily rely on these HUD-1 settlement statements. Plaintiffs allege discrimination in violation of the FHA and the ECOA based on the choice of B of A's predecessor, Countrywide, to finance plaintiffs' home improvement loan by extending multiple, successive cash-out refinances, each of which charged plaintiffs' fees and costs, rather than offering plaintiffs a conventional home equity line of credit. Thus, plaintiffs discrimination claims are explicitly based on the *type* of loan they were offered. While these exhibits may later become relevant to plaintiffs' claims, this is not sufficient to invoke the doctrine. Finally, B of A's argument that these exhibits "show the dates and parties to those loans and establish that plaintiffs' claims under the FHA and ECOA are time-barred" is insufficient to invoke the doctrine. This argument states a basis for why these exhibits are central

to B of A's *defense* to plaintiffs' FHA and ECOA claims.  The doctrine of incorporation does not extend to documents on which *defendants* rely to refute or disprove a claim.

While these documents may be relevant and admissible evidence to a determination on the merits, they are improperly offered at this stage of the proceedings.  The court therefore recommends the Request for Judicial Notice be DENIED as to Exhibits 3, 4, 5, 6, and 7.

## II.  Second Request for Judicial Notice

In the Second Request for Judicial Notice ("2nd RJN") (#61), B of A requests that the court take judicial notice of two additional documents attached as exhibits to the Declaration of Megan E. Smith in support of Defendants' Second Request for Judicial Notice and to Clarify the Record ("Second Smith Declaration" or "2nd Smith Decl.") (#62):  (1) a TILA disclosure statement bearing the date June 28, 2008 (2nd Smith Decl. Ex. 1); and (2) a Deed of Trust in the amount of $161, 250, which bears the recording stamp of the Curry County Clerk's Office dated July 9, 2008 (2nd Smith Decl. Ex. 2).  Plaintiffs object (#66) to the Second Request for Judicial Notice.

### A.  Exhibit 1

B of A argues that Exhibit 1 is central to plaintiffs' first TILA claim and thus may properly be judicially noticed under the doctrine of incorporation.  Specifically, B of A argues that plaintiffs' signature on the form acknowledging receipt of a complete copy of the disclosure creates a rebuttable presumption under 15 U.S.C. § 1635(c) that B of A provided the requisite number of copies of the disclosure.  (Reply, #73, at 4).  Plaintiffs object to Exhibit 1 on grounds it is an unauthenticated private business record.

In contrast to their opposition to the NORTC submitted as Exhibit 1 to B of A's first

Request for Judicial Notice (discussed above in section IB), plaintiffs do not argue here that Exhibit 1 differs in any material way from the document they signed at the loan closing on June 28, 2008. Rather, plaintiffs argue that Exhibit 1 is not properly subject to judicial notice because the "adjudicative facts that defendants suggest could be supported by and drawn from Exhibit 1 are in dispute." (Pl. Opp'n to Defs. 2nd Req. for Judicial Notice at 4-5). In other words, rather than disputing the authenticity of Exhibit 1, plaintiffs assert that none of the facts contained within the exhibit are properly subject to judicial notice, specifically, that although both plaintiffs signed Exhibit 1, thereby acknowledging that they had received "a complete copy" of the disclosure, it is not properly subject to judicial notice for that fact because plaintiffs dispute the evidentiary presumption created by their signed acknowledgment.

TILA provides that a written and signed acknowledgment of receipt of disclosures required under Title 15 U.S.C. § 1601 *et seq.*, by a person to whom TILA requires disclosures be given, "create[s] a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). This is an evidentiary standard. The inquiry into whether a plaintiff has or can rebut the presumption created by such a document is separate from the issue of whether the court may consider the document under the doctrine of incorporation by reference. Plaintiffs' SAC explicitly refers to Exhibit 1, they do not dispute its authenticity, and it is relevant to their claim for violation of TILA's notice requirements. Therefore, the court recommends the Second Request for Judicial Notice be GRANTED as to Exhibit 1.

**B. Exhibit 2**

B of A argues that Exhibit 2 is a publicly recorded document, therefore the court may properly take judicial notice of both its existence and its contents. Plaintiffs respond that while

Page 11 - REPORT AND RECOMMENDATION

Exhibit 2 is a publicly recorded document and therefore subject to judicial notice, the court may not take judicial notice of "any adjudicative facts that could be drawn from" it. (Id. at 5, ¶ B). The court finds that Exhibit 2 is a publicly recorded document properly subject to judicial notice, and therefore recommends the Second Request for Judicial Notice be GRANTED as to Exhibit 2.

### III. Conclusion

For the reasons stated above, the court recommends that B of A's Request for Judicial Notice be GRANTED in part and DENIED in part, and B of A's Second Request for Judicial Notice be GRANTED in its entirety.

### MOTION TO DISMISS

Plaintiffs' SAC alleges four claims for relief against B of A: (1) rescission and disclosure violations under TILA; (2) breach of contract, duty of good faith and fair dealing; (3) violation of the Fair Housing Act; and (4) violation of the Equal Credit Opportunity Act.

### I.    TILA

Plaintiffs allege in Count One of their SAC that defendants violated TILA by failing to deliver to each plaintiff all correct material disclosures and by failing to honor plaintiffs' right of rescission. Plaintiffs seek actual damages, statutory damages, and attorney fees and costs.

#### A.    Plaintiffs' TILA Disclosure Violation Claim

Defendants argue that RJN Exhibit 1 (the June 2008 NORTC) proves compliance with TILA's rescission notice requirements, and that 2nd RJN Exhibit 1 (the June 2008 disclosure statement) proves compliance with TILA's disclosure notice requirements. However, as discussed above, the NORTC is not properly subject to judicial notice due to the dispute regarding its authenticity. Moreover, while plaintiffs' signatures on the June 2008 disclosure

statement creates a presumption under § 1635(c) that B of A complied with TILA's notice requirement, plaintiffs may rebut that presumption through the presentation of evidence. The court therefore declines to decide, at this stage of the litigation, whether plaintiffs claim for violation of TILA's notice requirements fails.

Defendants' motion to dismiss plaintiffs' TILA disclosure violation claim should therefore be DENIED.

**B.      Plaintiffs' TILA Rescission Claim**

Plaintiffs' TILA rescission claim arises out of the June 28, 2008, refinance. Defendants argue plaintiffs' rescission claim should be dismissed because (1) the claim is time-barred, and (2) plaintiffs failure to plead their ability to tender back is fatal to their claim.

**1. Plaintiffs' TILA Rescission Claim Is Timely**

Defendants argue that RJN Exhibit 1 and 2nd RJN Exhibit 1 conclusively prove compliance with TILA's disclosure requirements, therefore, plaintiffs were required to rescind the 2008 loan within the three days provided by § 1635(a). (Mem. iso Mot. to Dismiss at 10-11). Because plaintiffs did filed their rescission claim more than one year after the June 28, 2008, loan closing, is untimely. therefore,

Under TILA, creditors must provide consumers with clear and accurate disclosures of the certain material terms such as finance charges, annual percentage rates of interest, and the borrower's rights. *See* 15 U.S.C. §§ 1631, 1632, 1635, 1638; Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S.Ct. 1408 (1998). If the lender fails to deliver the required disclosures on a consumer credit transaction loan secured by the borrower's principal dwelling, the Act gives the borrower the right to rescind the loan agreement at any time up until "midnight of the third

business day following the consummation of the transaction *or* delivery of the information and rescission forms required . . . together with a statement containing the material disclosures required . . . whichever is later." 15 U.S.C. § 1635(a) (emphasis added). The right to rescind expires three years "after the date of consummation of the transaction or upon the sale of the property, whichever occurs first," and may not thereafter be revived. 15 U.S.C. § 1635(f); Beach, 523 U.S. at 419

    As discussed above, the RJN Exhibit 1 is not properly subject to judicial notice due to the factual dispute regarding its authenticity, and the court declines to determine, on a motion to dismiss, whether plaintiffs can rebut the evidentiary presumption created by 2nd RJN Exhibit 1. The court finds that plaintiffs have alleged sufficient facts to establish that the disclosures they received at the closing did not comply with TILA. Plaintiffs' claim for rescission is therefore subject to a three year right of rescission, and is timely filed.

### 2. Plaintiffs' TILA Claim is Sufficiently Pled

    Defendants argue plaintiffs' claim is insufficiently pled under the Twombly/Iqbal standard. Specifically, by failing to allege facts regarding the steps they took to rescind the loan, and failing to attach either their rescission demand letter or B of A's response, defendants argue plaintiffs have merely stated a legal conclusion devoid of factual basis. (Mem. iso Mot. to Dismiss at 11 n. 3). This argument fails. Neither Twombly nor Iqbal requires a plaintiff to make detailed factual allegations or attach supporting documents proving the facts alleged in a complaint in order to state a claim. A plaintiff need only allege sufficient facts to demonstrate that, assuming all plaintiff allegations are true and drawing all reasonable inferences in plaintiffs' favor, their claims are plausible. Plaintiffs here allege that both the NORTC and the TILA

Page 14 - REPORT AND RECOMMENDATION

disclosure statement delivered at the June 28, 2008 closing were either incomplete, inaccurate, or both. (SAC at 4-5, ¶ 15). Accepting these factual allegations as true, plaintiffs' claim is governed by the three year limitations period in § 1635(f). Plaintiffs further allege that they sought rescission by written demand letter on or about May 22, 2009, less than a year after the closing, and that B of A refused to honor that request. (SAC at 6, ¶ 18). At the pleading stage, this is sufficient to state a TILA rescission claim.

### 3. Plaintiffs' TILA Claim - Ability to Tender Back

Defendants argue that plaintiffs must allege sufficient facts to prove their willingness *and* ability to tender back the proceeds received from the June 28, 2008, loan in order to be entitled to TILA's rescission remedy, and that their failure to do so is fatal to their rescission claim. (Mem. iso Mot. to Dismiss at 11-16). Specifically, while plaintiffs have pled their willingness to tender back, they have not pleaded that they have the *ability* to do so, nor do the facts support that inference. (Id. at 13).

Under TILA, a creditor who receives notice that a borrower is exercising his or her right of rescission must, within 20 days of receiving the rescission notice, return all money and property paid to the borrower and terminate the security interest in the property. 15 U.S.C. § 1635(b). Once the creditor completes its obligation, the borrower must tender the property he received from the creditor. Id.

Defendants acknowledge that a split in authority exists on the tender back issue, but argue that the weight of authority favors requiring plaintiffs to plead a willingness and ability to tender back in order to survive a motion to dismiss, and, moreover, that such a pleading requirement is consistent with both the language and the legislative intent of the Act. (Id. at 15-16). Plaintiffs

Page 15 - REPORT AND RECOMMENDATION

respond that dismissing a TILA rescission claim at the pleading stage for failure to plead an

ability and willingness to tender back is contrary to the weight of authority, the plain language of

the Act, and the Act's legislative intent, which is to protect consumers. Plaintiffs further argue

that, should the court require plaintiffs to plead an ability to tender back, they have stable income

and are willing and able to tender back the loan proceeds "by means of a refinance . . . a modified

loan, a non-interest bearing payment plan, or any other equitable means of tender ordered by the

court." (Pl. Response in Opp'n to Mot. to Dismiss at 19).

Courts have no discretion to alter TILA's substantive provisions. Semar v. Platte Valley

Fed. Sav. & Loan, 791 F.2d 699, 705-06 (9th Cir. 1986). However, the Act itself provides courts

with some discretion to modify its procedural requirements. 15 U.S.C. § 1635(b) ("The

procedures prescribed by this subsection shall apply except when otherwise ordered by a court.").

The Ninth Circuit has held that "a district court has discretion to modify the sequence of

rescission events" to condition rescission on tender by the borrower. Yamamoto v. Bank of

N.Y., 329 F.3d 1167, 1168 (2003); see also Ljepava v. M. L. S. C. Props.. Inc., 511 F.2d 935,

944 (1975) (view that tender is a mandatory requirement for rescission is inconsistent with TILA;

court must balance concern that lender receive the money they advance under loan agreement

with the Act's main purpose, which is to allow rescission); Palmer v. Wilson, 502 F.2d 860, 862

(1974) (court has discretion to condition rescission on debtor's compliance with court order to

tender creditor the principal of the loan that the debtor has received); see also Henderson v.

GMAC Mortg. Corp., 347 Fed. Appx. 299, 302, 2009 WL 3059089 (9th Cir. 2009); Luciano v.

Weyerhaeuser Mortg. Co., 200 Fed.Appx. 628, 2006 WL 2471948 (9th Cir. 2006). Whether a

court should exercise its discretion and alter the sequence of procedures under § 1635(b) must be

Page 16 - REPORT AND RECOMMENDATION

determined on a case-by-case basis, considering the entirety of the circumstances, including the

nature of the violations and the borrower's ability to repay the proceeds. Yamamoto, 329 F.3d at

1173.

While the Ninth Circuit has decided the tender back issue in a determination on the

merits, it has not yet decided whether a plaintiff asserting a TILA rescission claim must plead an

ability and willingness to tender back in order to survive a motion to dismiss. In both Yamamoto

and Palmer, the tender back issue was addressed after plaintiffs' TILA claims were adjudicated

on motions for summary judgment. In Ljepava, the tender back issue was addressed after the

plaintiff's TILA claims were tried on the merits. The parties have not cited, and this court has not

found, any controlling Ninth Circuit law holding that a plaintiff must plead a willingness, ability,

or both, to tender back in order to adequately plead a claim for rescission under TILA.

While district courts throughout the Ninth Circuit have relied on Yamamoto in dismissing

TILA rescission claims at the motion to dismiss stage on grounds that the borrower failed to

allege a present ability to tender back, district courts within the District of Oregon have

consistently held declined to do so. *See* James v. Bridge Capital Corp., No. 08-CV-397-BR,

2011 WL 309692, * 9 (D. Or. Jan. 27, 2011) (declining to rule on defendant's motion to dismiss

and deferring determination of the plaintiff's ability to tender back, even though it appeared

unlikely that plaintiff would be immediately able to tender the loan proceeds if rescission found

to be an appropriate remedy); Russell v. Mortg. Solutions Mgmt., Civ. No. 08-1092-PK, 2010

WL 3945109, * 3 (D. Or. Oct. 6, 2010) (declining to dismiss plaintiff's TILA rescission claim

and concluding that "Yamamoto does not sanction dismissal at the pleading stage for failure to

allege the ability to tender"); Bushong v. Paramount Equity Mortg., Inc., Civ. No. 09-1080-AC,

Page 17 - REPORT AND RECOMMENDATION

2010 WL 3945256, * 2 (D. Or. Oct. 6, 2010) (same).

Defendant cites <u>Hogan v. NW Trust Servs., Inc.</u>, No. 10-6027-HO, 2010 WL 1872990

(D. Or. May 7, 2010) ("Hogan 1") and <u>Hogan v. NW Trust Servs., Inc.</u>, No. 10-6028-HO, 2010

WL 1872945 (D. Or. May 7, 2010) ("Hogan 2") (collectively, "the <u>Hogan</u> cases") for the

proposition that a court *must* require the plaintiff to return or offer to return the proceeds received

in an loan transaction before finding that the plaintiff is entitled to equitable relief. Defendant's

reliance on the <u>Hogan</u> cases is understandable, but misplaced. In the <u>Hogan</u> cases, *pro se*

plaintiffs sought rescission under TILA and on grounds of fraud and public policy. <u>Hogan 1</u>,

2010 WL 1872990 at * 8; <u>Hogan 2</u>, 2010 WL 1872945 at * 7. In both <u>Hogan</u> cases, the court

granted the defendants' motion to dismiss, holding that the plaintiffs' right to rescission under

TILA had expired upon the property's legally noticed non-judicial foreclosure sale. <u>Id.</u>; *see*

<u>Beach</u>, 523 U.S. at 413; *see also* 12 C.F.R. § 226.23(a)(3). Having disposed of plaintiffs' TILA

rescission claim as a matter of law, the court was not required to consider the tender back issue.

However, the court concluded in dictum that "without a plaintiff's tender, TILA rescission would

be an empty, and inappropriate remedy," citing <u>American Mortgage Network, Inc. v. Shelton</u>,

486 F.3d 815 (4th Cir. 2007). <u>Hogan 1</u>, 2010 WL 1872990 at * 8; <u>Hogan 2</u>, 2010 WL 1872945

at * 7.

In <u>Shelton</u>, the Fourth Circuit affirmed summary judgment in favor of the defendant

mortgagee, rejecting the plaintiffs' argument that the defendant was required under § 1635(b) to

unconditionally release its security interest in the plaintiffs' residence upon receipt of their notice

of rescission. <u>Shelton</u>, 486 F.3d at 820-21. Citing <u>Yamamoto</u>, the Fourth Circuit concluded that

the plaintiffs' notice of rescission merely advanced a claim seeking rescission, which remained a

claim until an "appropriate decision maker," such as the court, determined whether the right of rescission was available to them. Id. at 821. Because the plaintiffs' testified they were unable to tender back the loan proceeds and had demonstrated no intention to repay the debt, the Fourth Circuit held that it was within the trial court's discretion to either deny rescission altogether or condition rescission on plaintiffs' tender. Id. Thus, Shelton simply affirms the principle established in Yamamoto and affirmed by the courts of this district that, following a determination on the merits, a court may condition rescission on a plaintiff's ability to tender back and, where no such ability is demonstrated, may deny the remedy of rescission.

While recognizing that courts in other districts have held otherwise, this court finds the reasoning set out in James, Russell, and Bushong persuasive. In particular, the court notes that TILA is a remedial statute and is to be broadly construed in favor of the consumer. *See* Hauk v. JP Morgan Chase Bank U.S., 552 F.3d 1114, 1118 (9th Cir. 2009). Requiring a plaintiff to allege the ability to tender back imposes a pleading requirement not found in the Act itself burdens the plaintiff and favors the defendant, contrary to the Act's broad remedial purpose. To read Yamamoto as imposing such a burden on plaintiff "would confer upon the district court the discretionary power to add, in particular cases and based on uncertain criteria, an item to the list of elements required to state a rescission claim." Bothelho v. U.S. Bank, N.A., 692 F.Supp.2d 1174, 1180 (N.D. Cal. 2010). Thus, Yamamoto is best read to require that the court to consider whether rescission should be conditioned on tender back by the plaintiff if, after consideration of the evidence presented at trial or summary judgment, plaintiff's ability, willingness, or intent to do so is inherently questionable. *See* Russell, 2010 WL 3945109 at *3 (interpreting Yamamoto in this way is the most "workable process"); Bushong, 2010 WL 3945256 at * 3 (same). Thus

Page 19 - REPORT AND RECOMMENDATION

the court holds that, at the pleading stage, plaintiffs' TILA rescission claim does not fail for failure to allege the ability to tender back.

### Conclusion

For the reasons stated above, defendants' motion to dismiss plaintiffs' TILA claims should be DENIED.

## II.    BREACH OF CONTRACT, DUTY OF GOOD FAITH & FAIR DEALING

Plaintiffs concede that their claim for breach of contract and the duties of good faith and fair dealing, alleged in Count Two of the SAC, has been rendered moot by changed circumstances. (Pl. Response to Def. Mot. to Dismiss at 28). Plaintiffs further request leave to amend their complaint to conform their allegations to reflect the current legal and factual situation of their case. (Id.). Defendant does not oppose plaintiffs' request for leave to amend. Therefore, B of A's motion to dismiss plaintiff's claim for breach of contract and the duty of good faith and fair dealing should be GRANTED without prejudice, and plaintiffs request for leave to amend should be GRANTED.

## III.   DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT ("FHA") & THE EQUAL CREDIT OPPORTUNITY ACT ("ECOA")

### A.    THE CLAIMS

Plaintiffs allege three interrelated claims for violations of the FHA and ECOA.

#### 1.  FHA § 3604

In Count Three of their SAC, plaintiffs allege discrimination on the basis of disability in violation of two subsections of § 3604: (1) under § 3604(f)(1), that their housing was made "unavailable" through a series of unaffordable and predatory mortgage loans with monthly payments which defendants knew or should have known plaintiffs could not afford, predictably

Page 20 - REPORT AND RECOMMENDATION

resulting in default; and (2) under § 3604(f)(2), that defendants discriminated against them in a service in connection with their dwelling by issuing multiple successive refinance mortgage loans instead of extending them a conventional home equity line of credit.

### 2. FHA § 3605

In Count Three of their SAC, plaintiffs allege defendants discriminated against them on the basis of their disabilities by extending mortgage loans on terms and conditions less favorable than would have been offered to other applicants without those same disabilities, in violation of § 3605(a).

### 3. ECOA § 1691

In Count Four of their SAC, plaintiffs allege defendants violated section 1691(a) of the ECOA by: (1) extending to plaintiffs a series of loans on terms and conditions less favorable than offered to other applicants because their income is derived exclusively from a public assistance program, in violation of § 1691(a)(2); and (2) commencing and continuing to pursue foreclosure proceedings on plaintiffs' mortgage because plaintiffs asserted their rights under TILA after refusing to honor plaintiffs' May 22, 2009, rescission letter, in violation of § 1691(a)(3).

### B. PLAINTIFFS CLAIMS RELATING TO THE 2005, 2006, AND 2007 LOANS ARE TIME-BARRED

Defendants argue that, even assuming the 2005, 2006, and 2007 mortgage loans violated the FHA or ECOA, those violations are discrete acts of discrimination which "occurred" at the time the loan terms were offered, triggering the two year statue of limitations, and, as a result, any claim related to these loans is time barred. Plaintiffs respond that the 2005, 2006, and 2007 mortgage loans are part of the same continuing pattern of discrimination as the 2008 mortgage

Page 21 - REPORT AND RECOMMENDATION

loan, and thus survive under a continuing violation theory.

Claims under the FHA and the ECOA must be brought within two years of the date of "the occurrence or the termination of an alleged discriminatory housing practice" (in the case of the FHA) and within two years of "the occurrence of the violation" (in the case of the ECOA). 42 U.S.C. § 3613(a);15 U.S.C. § 1691e(f). For purposes of the statute of limitations, a distinction must be made between practices that constitute continuing violations, and practices that constitute discrete acts of discrimination. Havens Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S.Ct. 1114 (1982). In order to make this distinction, it is necessary to identify the specific discriminatory practice at issue. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 624, 127 S.Ct. 2162 (2007) (citing Natn'l R. R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11, 122 S.Ct. 2061 (2002)).

In Havens, the plaintiffs alleged that the defendant engaged in unlawful "racial steering" by providing differing information about the availability of housing to prospective renters according to their race, such that African American renters were disproportionately excluded from certain communities. 455 U.S. at 368-69. The Court held that where the plaintiffs alleged that this practice resulted in an adverse impact on a community by depriving its residents of the benefits of interracial association ("the neighborhood claims"), the plaintiffs successfully stated a continuing violation claim under the FHA. Id. at 381. However, the Court further held that a single plaintiff alleged she was personally subject to this practice ("the tester claims"), she alleged a claim for separate incidents of violations of her individual right to truthful information about the availability of housing, not a continuing violation. Id.

Defendants argue that the Supreme Court has retreated from Havens in the wake of overly

Page 22 - REPORT AND RECOMMENDATION

broad judicial applications of the continuing violations exception, citing <u>Ledbetter</u> and <u>Morgan</u>. Both <u>Morgan</u> and <u>Ledbetter</u> analyzed the continuing violation exception in the context of Title VII claims, not FHA claims.  However, when deciding housing discrimination claims the Ninth Circuit frequently looks to employment discrimination claims.  <u>Cmty. House, Inc. v. City of Boise</u>, 490 F.3d 1041, 1048 n. 3 (9th Cir. 2007) (*citing* <u>Gamble v. City of Escondido</u>, 104 F.3d 300, 304 (9th Cir. 1997); <u>Pfaff v. U.S. Dep't of Hous. & Urban Dev.</u>, 88 F.3d 739, 745 n. 1 (9th Cir. 1996)).  This court therefore looks to <u>Morgan</u> and <u>Ledbetter</u> for guidance.

Plaintiffs in this case allege claims for disparate treatment, not disparate impact.  In the context of Title VII disparate treatment claims, it is insufficient to merely allege discrimination as the result of a practice that extends over time and through a series of related acts.  Where that "practice" remains divisible into a set of discrete acts, each of which is individually actionable, the continuing violation exception does not apply, rather legal action based on each discrete act must be brought within the statutory limitations period.  <u>Morgan</u>, 536 U.S. at 113-17.  However, where the "practice" consists of acts which are not individually actionable, but rather become actionable based on the cumulative effects of repeated conduct occurring over a period of time, the continuing violation exception may apply.  <u>Morgan</u>, 536 U.S. at 117 (plaintiff could base his hostile work environment claim on serial violations because "the entire hostile work environment encompasses a single unlawful employment practice").  The Supreme Court has since elaborated on <u>Morgan</u>, holding that current effects alone are insufficient to resuscitate prior acts of discrimination, thus if a plaintiff does not timely file charges for discrete acts of discrimination, subsequent nondiscriminatory acts that give present effect to past discriminatory acts do no result in new violations.  <u>Ledbetter</u>, 550 U.S. at 628.

The Ninth Circuit has not explicitly held that <u>Morgan</u> limits the continuing violation

exception. *But see* <u>Alpha III, Inc. v. City of San Diego</u>, 187 Fed.Appx. 709, 711 n. 1, 2006 WL

1876853, * 2 n. 1 (9th Cir. 2006) (applying <u>Havens</u> because the Supreme Court "had no occasion

to consider an FHA claim or the holding in <u>Havens</u>" when deciding <u>Morgan</u>, but finding no error

in the district court's application of <u>Morgan</u> to limit continuing violation doctrine in context of

FHA claim); *see also* <u>Butler v. City of Eugene, Or.</u>, 707 F.Supp.2d 1100, 1104 (D. Or. 2010)

(Supreme Court rejected the continuing violations doctrine for disparate treatment claims in

<u>Morgan</u>). The Ninth Circuit has, however, explicitly noted the limiting effect of <u>Ledbetter</u> on the

continuing violation doctrine.

In <u>Garcia v. Brockway</u>, the plaintiffs alleged that the defendants had failed to comply with

the FHA's design and construction requirements for multifamily dwellings. 526 F.3d 456, 459-

60 (9th Cir. 2008). The plaintiffs argued, in relevant part, that the violation was a continuing one

that did not terminate until the defects were cured. <u>Id.</u> at 461. The Ninth Circuit rejected this

argument, holding that the plaintiffs confused a continuing violation, which "is occasioned by

continual unlawful acts," with the "continual ill effects from an original violation." <u>Id.</u> at 462

(*citing* <u>Ward v. Caulk</u>, 650 F.2d 1144, 1147 (9th Cir. 1981)). Noting the Supreme Court's

emphasis on identifying the specific discriminatory practice at issue, the Ninth Circuit held that

because the plaintiffs alleged violation of the FHA due to the design and construction of the

property, the violation was not continuous, but instead terminated at the conclusion of the design

and construction phase. <u>Id.</u> at 462 (*citing* <u>Ledbetter</u>, 550 U.S. at 624). Thus, although the

properties' noncompliance continued past that point and the plaintiffs continued to experience the

effects of the defendants' violation, this was merely the manifestation of continued ill effects

from the original violation which alone had no present legal consequence and could not

resuscitate the plaintiffs' claims. Id. at 462-63 (internal citations omitted).

Here, the "practice" on which plaintiffs base their claims is the issuing of mortgage loans

by defendants.  Specifically, plaintiffs allege that because of their disabilities and because their

income derives solely from a public assistance program, defendants intentionally discriminated

against them by issuing mortgage loans in 2005, 2006, 2007, and 2008 on terms and conditions

less favorable than would have been offered to other persons not in their protected class.  Had

plaintiffs alleged a disparate impact claim, they would have to prove the existence of a facially

neutral housing practice that has a significantly adverse or disproportionate impact on persons

within plaintiff's protected class. Watson v. Fort Work Bank & Trust, 487 U.S. 977, 994, 108

S.Ct. 2777 (1988); Palmer v. U.S., 794 F.2d 534, 538 (9th Cir. 1986).  Such a claim is analogous

to the "neighborhood" claim raised in Havens and the hostile work environment claim raised in

Morgan.

However, plaintiffs allege a claim for disparate treatment.  The central element of a

disparate treatment claim is discriminatory intent. Ledbetter, 550 U.S. at 624.  To prevail,

plaintiffs must prove that the act of deliberate discrimination occurred within the limitations

period. Lewis v. City of Chicago, Ill., -- U.S. --, 130 S.Ct. 2191, 2199 (2010).  This claim is

analogous to the "tester" claim raised in Havens, the discrete discrimination claims raised in

Morgan, and the building and construction violation claim raised in Garcia.  Even assuming that

the loans violated plaintiffs' rights under the FHA or the ECOA, it did so directly, and the

violation was complete at the time the loan issued.  Plaintiffs' reliance on Ramirez v. Greenpoint

Mortgage Funding, Inc., 633 F.Supp.2d 922 (N.D. Cal. 2008) as being to the contrary is

misplaced.  Ramirez involved a disparate impact claim, not a disparate treatment claim, and is

therefore factually distinguishable from the facts of this case.

Although plaintiffs' loans are related in that they are successive refinances of the same

original loan, this is not sufficient to invoke the continuing violation exception.  Under Havens,

Morgan, Ledbetter, and Garcia, the salient point is that each loan was independently actionable.

As in Garcia, to the extent that any loan violated the FHA or the ECOA, the violation was

complete at the time that each loan was executed and the terms given effect.  Thus, plaintiffs

could have filed a claim for violation of the FHA, the ECOA, or both, after any single loan was

issued, and to prevail need only prove that the loan was issued with the requisite discriminatory

intent.

On these facts, the court finds that each loan was a separate discrete act, such that any

violation of the FHA or the ECOA accrued at the time that the loan was issued.  Thus, plaintiffs

were required to file a claim for any such alleged violation within two years of each loan.

Because they failed to do so, any claims for violations of the FHA and the ECOA arising from

the 2005, 2006, and 2007 mortgage loans are time barred.  Therefore, defendants' motion to

dismiss these claims should be GRANTED.

### C.    § 3604 OF THE FHA DOES NOT APPLY TO REFINANCE TRANSACTIONS

Defendants argue that § 3604 of the FHA applies only to purchase transactions and is

therefore inapplicable to plaintiffs' claims regarding the 2005, 2006, 2007, and 2008 mortgage

loans, since each loan was a refinance transaction, not a purchase transaction.  Plaintiffs respond

that § 3604(f) provides broader protections than the other subsections of § 3604, and urges the

court to extend this section to apply to refinance transactions as well as purchase transactions.

Specifically, plaintiffs argue that by extending loans with monthly payments which defendants

knew or should have known that plaintiffs did not have the ability to make, predictably resulting

in default, defendants made plaintiffs' housing unavailable in violation of § 3604(f)(1). And, by

extending mortgage loans on different terms and conditions than would have been offered to

other persons not suffering from plaintiffs' disabilities, defendants discriminated in the provision

of a service in connection with that housing in violation of § 3604(f)(2).

Section 3604(f) provides, in relevant part, that it is unlawful to:

"(1)  To discriminate in the sale or rental, or to otherwise make unavailable or
deny, a dwelling to any buyer or renter because of a handicap of--

    (A)  that buyer or renter,

    (B)  a person residing in or intending to reside in that dwelling after it is
sold, rented or made available; or

    (C)  any person associated with that buyer or renter.

(2)  To discriminate against any person in the terms, conditions, or privileges of
sale or rental of a dwelling, or in the provision of services or facilities in
connection with such dwelling, because of a handicap of--

    (A)  that person; or

    (B)  a person residing in or intending to reside in that dwelling after it is
sold, rented, or made available; or

    (C)  any person associated with that person."

42 U.S.C. § 3604(f).  The parties have not cited, and the court has not found, any controlling

Ninth Circuit case law deciding whether § 3604 applies solely to sale and rental transactions, or

whether it extends to transactions on previously owned property as well.[1]  Therefore, whether

---

[1] *But see* Gibson v. Household Int'l, Inc., 151 Fed.Appx. 529, 531, 2005 WL 2542642, *1
(9th Cir. 2005) (rejecting plaintiff's argument that § 3604 applies to a non-purchase money loan

plaintiffs can succeed in their argument depends on the meaning of the term "make unavailable"

in § 3604(f)(1), and "service" in § 3604(f)(2).

Statutory construction begins with the plain meaning of the language of the statute itself.

Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941 (2002); Cooper v. F.A.A.,

622 F.3d 1016, 1028 (9th Cir. 2010).  The purpose of statutory construction "is to give effect to

the will of Congress, and where its will has been expressed in reasonably plain terms, that

language must ordinarily be regarded as conclusive."  Griffin v. Oceanic Contractors, Inc., 458

U.S. 564, 570, 102 S.Ct. 3245 (1982) (internal quotation marks omitted).  However, where the

statute is silent or ambiguous, the court shall defer to the permissible construction of that statute

by the agency charged with administering it.  Ojo v. Farmers Group, Inc., 600 F.3d 1205, 1208

(9th Cir. 2010) (en banc) (per curiam) (*citing* Chevron U.S.A., Inc. v. Natural Res. Def. Council,

Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984)).

In Ojo, the Ninth Circuit was required as a preliminary matter to determine whether the

discriminatory provision of homeowner's insurance violated § 3604 of the FHA.  600 F.3d at

1207.  Noting that the terms "make unavailable" and "service" as used in § 3604(a) and (b) were

ambiguous, and that § 3614(a) of the FHA authorizes the Department of Housing and Urban

Development ("HUD") to promulgate regulations implementing the FHA, the court deferred to

HUD's explicit determination that § 3604 of the FHA prohibits discrimination in the provision of

homeowner's insurance.  Id. at 1208 (*citing* 24 C.F.R. § 100.70(d)(4)).  In so doing , the court

noted that housing could arguably be made "unavailable" if lack of homeowners insurance

precluded individuals from securing loans with which to *buy* a home; this in turn allowed the

as unsupported by the plain language of the statute and case law).

characterization of homeowner's insurance as a "service" connected to the *sale* of a dwelling. Id. (emphasis added). The Ninth Circuit therefore joined the Sixth and Seventh Circuits in holding that § 3604 of the FHA prohibits racial discrimination in both the denial and pricing of homeowner's insurance. Id. (*citing* Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1359-60 (6th Cir. 1995); NAACP v. Am Family Mut. Ins. Co., 978 F.2d 287, 300-01 (7th Cir. 1992)).

Ojo is significant in two ways. First, the Ninth Circuit was careful to stress that restrictions on the availability of homeowners insurance had arguably negative implications with respect to property *purchase* transactions, not transactions relating to previously owned property. Second, the Ninth Circuit was only compelled to engage in statutory construction because § 3604 was ambiguous as to whether it applied to property insurers. In contrast, the plain text of the statute refutes plaintiffs' argument that § 3604(f)(1) applies to refinance transactions. The statute provides that it applies to "any buyer or renter." 42 U.S.C. § 3604(f)(1). At the time of the loans at issue here, plaintiffs were neither "buyers" nor "renters," they were owners. Where the relevant language is plain and unambiguous, the court need not look further to determine the legislative intent. Cooper, 622 F.3d at 1028 (*citing* U.S. v. Carter, 421 F.3d 909, 911 (9th Cir. 2005)). Likewise, while § 3604(f)(2) applies to "any person" rather than any "buyer or renter," it applies only to the "terms, conditions, or privileges of *sale or rental* of a dwelling, or in the provision of services or facilities *in connection with such dwelling*." 42 U.S.C. 3604(f)(2) (emphasis added). Thus, § 3604(f)(2) is plainly restricted to property that is sold or rented, not property that is already owned.

The inclusion of the word "services" in § 3604(f)(2) does not change this outcome. "A word in a statute may or may not extend to the outer limits of its definitional possibilities.

Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252 (2006). § 3604 is immediately followed by § 3605 which, by its clear and unambiguous terms and as interpreted by HUD, is designed for the purpose of prohibiting discrimination in lending for previously owned homes. 42 U.S.C. 3605 (prohibiting discrimination on the basis of handicap in the making or purchasing of loans or other financial assistance for "improving, repairing, or maintaining a dwelling"); 24 C.F.R. § 100.130 (making discrimination on the basis of handicap in lending or other financial assistance related to the "improvement, repair or maintenance" of a dwelling unlawful under § 3605). By expressly limiting § 3604(f)(2) to the sale or rental of property, rather than all residential real estate-related transactions, Congress evidenced its intent that § 3604 should to apply exclusively to purchase transactions. *See* Gaona v. Town & Country Credit, 324 F.3d 10501057 n. 7 (8th Cir. 2003) (§ 3604(f)(2) "bars discrimination in sales and rentals, rather than loans"); Matthews v. New Century Mortg. Corp., 184 F.Supp.2d 874, 885 (S.D. Ohio 2002) (although § 3604 is to be broadly construed, it does not reach "transactions involving financial assistance requested for the purpose of improving, repairing, or maintaining a dwelling that the owner had previously acquired").

For the reasons stated above, defendants' motion to dismiss plaintiffs' claims under § 3604 should be GRANTED.

**D.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR DISCRIMINATION UNDER § 3605 OF THE FHA OR ECOA**

Defendants argue that the 2008 mortgage loan cannot give rise to any claim for violations of Hodges' rights under either the FHA or the ECOA because she was not a party to the

Page 30 - REPORT AND RECOMMENDATION

transaction. Defendants further argue that all of Woodworth's claims fail because (1) he cannot

show that he was refused a loan despite his qualifications; (2) he has failed to allege that loans

were made on more favorable terms to applicants with qualifications comparable to his but not in

the same protected class; and (3) he has failed to allege any facts showing that he was provided

unfavorable financing because of his status as a member of a protected class. Plaintiffs respond

that (1) Hodges may assert claims under the FHA and the ECOA due to her association with

Woodworth; (2) denial of credit is not required for reverse redlining disparate treatment claims;

(3) plaintiffs have adequately alleged facts which allow the inference both that more favorable

terms were available and that these terms were not offered to plaintiffs because of their status as

members of a protected class. In the event the court determines the claims are insufficiently pled,

plaintiffs request leave to amend their complaint.

> § 3605 of the FHA provides:

> "It shall be unlawful for any person or other entity whose business includes
> engaging in residential real estate related transactions to discriminate against any
> person in making available such a transaction, or in the terms or conditions of
> such a transaction, because of race, color, religion, sex, handicap, familial status,
> or national origin."

42 U.S.C. § 3605(a). "Residential real estate-related transaction" is defined to include any loan

or financial assistance made for the purchase, construction, improvement, repair, or maintenance

of a dwelling, or secured by residential real estate. 42 U.S.C. § 3605(b). In the Ninth Circuit, a

plaintiff can establish an FHA discrimination claim under a theory of disparate treatment or

disparate impact. Gamble v. City of Escondido, 104 F.3d 300, 304-05 (9th Cir. 1996) (*citing*

Pfaff v. U.S. Dep't of Hous. & Urban Dev., 88 F.3d 739, 745 & n. 1 (9th Cir. 1996) & Ring v.

First Interstate Mortg., Inc., 984 F.2d 924, 926 & n. 2 (8th Cir. 1993)).

The ECOA provides, in relevant part, that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under [the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. §§ 1601, *et seq.*]." 15 U.S.C. § 1691(a)(2), (3). A plaintiff can establish an ECOA claim under a theory of disparate treatment or disparate impact. Miller v. American Exp. Co., 688 F.2d 1235, 1240 (9th Cir. 1980).

Plaintiffs allege claims under the FHA and the ECOA under a disparate treatment theory only. Disparate treatment claims are analyzed under the three-step McDonnell Douglas /Burdine burden shifting test. Gamble, 104 F.3d at 104 (referring to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981)). The crucial element of a disparate treatment claim is proof of discriminatory motive. Ledbetter, 550 U.S. at 624; Gamble, 104 F.3d at 305. Plaintiff may prove discriminatory motive by satisfying the fourth element of the McDonnell Douglas /Burdine burden shifting test, or by simply producing direct evidence demonstrating that a discriminatory reason more likely than not motivated the challenged decision. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122-23 (9th Cir. 2004).

Plaintiffs do not allege that they were denied a mortgage loan. Rather, plaintiffs allege that defendants engaged in a form of discrimination termed "reverse redlining," a practice in where a lender unlawfully discriminates against persons within a protected class of people by extending credit on terms less favorable than the terms offered to people outside the protected class. *See* Davenport v. Litton Loan Serv., LP, 725 F.Supp.2d 862, 875 (N.D. Cal. 2010); Hafiz

Page 32 - REPORT AND RECOMMENDATION

v. Greenpoint Mortg. Funding, 652 F.Supp.2d 1039, 1045 (N.D. Cal. 2009); *see also* M & T

Mortg. Corp. v. White, 736 F.Supp.2d 538, 574-75 (E.D.N.Y. 2010); Matthews v. New Century

Mortg. Corp., 185 F.Supp.2d 874, 886 (S.D. Ohio 2002); Hargraves v. Capital City Mortg. Corp.,

140 F.Supp.2d 7, 20 (D. D.C. 2000). The Ninth Circuit has not yet been called upon to decide

the elements of an FHA claim for "reverse redlining." In cases where reverse redlining claims

are recognized, a four part test governs whether a plaintiff has sufficiently pled a claim. Under

this test, plaintiffs must allege: (1) that they are members of a protected class; (2) that they

applied for and were qualified for a loan; (3) that the loan was given on grossly unfavorable

terms; and (4) that the lender either intentionally targeted them for unfair loans or currently

makes loans on more favorable terms to other people not in the protected class. Davenport, 725

F.Supp.2d at 876.

     The court adopts this four part test for the purpose of analyzing plaintiffs' reverse

redlining claim. Applying those elements, the court finds that plaintiffs have not sufficiently pled

a claim for violation of either the FHA or the ECOA. Specifically, plaintiffs have failed to plead

facts demonstrating that they were qualified for any loan other than the one they received, only

that they were offered terms and conditions less favorable than they "should have" qualified for,

citing the fact that they were not given a conventional home equity loan although such a product

was available and "likely" offered to other people not in their protected class. With respect to the

fourth element, plaintiffs have failed to plead any facts either showing directly or raising the

inference that discriminatory animus motivated the defendants' conduct; they plead only that

defendants "were informed" of their disabilities and source of income, and that defendants closed

the loans despite this knowledge. This is insufficient under the Twombly/Iqbal standard to state

a plausible claim for relief.

For the reasons stated above, defendants' motion to dismiss plaintiffs' claims under the ECOA and § 3605 should be GRANTED without prejudice, and plaintiffs request for leave to amend should be GRANTED.

### RECOMMENDATION

For the reasons stated above, the court recommends that B of A's Request for Judicial Notice (#30) be GRANTED in part and DENIED in part, that B of A's Second Request for Judicial Notice (#61) be GRANTED in its entirety, and that the motion to dismiss (#32) be GRANTED in part and DENIED in part, and plaintiffs should be granted leave to amend.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. ***Objections to this Report and Recommendation, if any, are due by April 11, 2011. If objections are filed, any response to the objections are due by April 28, 2011.*** *See* FRCP 72, 6.

DATED this _____ day of March, 2011.

_____
MARK D. CLARKE
United States Magistrate Judge